UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TABITHA D. WINTERS,

                Plaintiff,

                                    Case No. 20-cv-71-pp

     v.

MARTIN J. O'MALLEY,

                Defendant.

## ORDER AFFIRMING FINAL ADMINISTRATIVE DECISION OF THE COMMISSIONER

On January 15, 2020, the plaintiff appealed an administrative law judge's final administrative decision finding her not "disabled" within the meaning of the Social Security Act. Dkt. No. 1. The Social Security Administration's Appeals Council denied review, rendering the administrative law judge's decision the final decision of the Commissioner. The court will affirm the Commissioner's decision.

## I.    Procedural History and the ALJ's Decision

On November 7, 2016, the plaintiff filed a Title II application for disability insurance benefits with an alleged disability onset date of May 20, 2015. Dkt. No. 12-1 at 23. The Social Security Administration (SSA) denied the plaintiff's claims on May 30, 2017 and again on reconsideration on July 12, 2017. Id.

On August 10, 2017, the plaintiff filed a request for a hearing before an administrative law judge (ALJ). Id. On September 13, 2018, she appeared at a telephone hearing, represented by a "non-attorney representative," Jeffrey Scotese. Id. Vocational expert (VE) William S. Dingess also was present. Id. On

1

February 4, 2019, ALJ Margaret J. O'Grady issued a decision, finding that the plaintiff was not "disabled" as defined by the Social Security Act. Id. at 20–37. The ALJ found that the plaintiff, born October 5, 1975, was thirty-nine years old on the alleged disability onset date and "ha[d] at least a high school education." Id. at 32–33. She found that the plaintiff "ha[d] not engaged in substantial gainful activity since May 20, 2015, the alleged onset date." Id. at 25 (citing 20 CFR §§404.1571 et seq.). The ALJ also found, based on the VE's testimony, that the plaintiff had past relevant work as a collection clerk and mortgage clerk and that the plaintiff was unable to perform any past relevant work. Id. at 32 (citing 20 CFR §§ 404.1565).

To be entitled to benefits under the Social Security Act, a claimant must be "aged, blind, or disabled." 42 U.S.C. §1382(a)(1). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Id. at §1382c(a)(3)(A). The impairment must be of "such severity that [the plaintiff] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 1382c(a)(3)(B). In evaluating a claim for disability benefits, administrative law judges (ALJs) follow a five-step, sequential process. Apke v. Saul, 817 F. App'x 252, 255 (7th Cir. 2020); Fetting v. Kijakazi, 62 F.4th 332, 336 (7th Cir. 2023).

At step one, the ALJ determined that the plaintiff had worked after the alleged onset date, but that the work activity did not rise to the level of substantial gainful activity. Dkt. No. 12-1 at 25. At step two, the ALJ

2

determined that the plaintiff had severe impairments, including depressive disorder, bipolar disorder, generalized anxiety disorder, panic disorder and attention deficit disorder. Id. The ALJ found that the plaintiff's migraine headaches and irritable bowel syndrome were non-severe. Id. at 26. At step three, considering the plaintiff's impairments individually and in combination, the ALJ saw "no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings 12.00 and 5.00." Id. The ALJ determined that the medical evidence failed to establish the requirements of listing 5.06 regarding the plaintiff's inflammatory bowel disease. Id. The severity of the plaintiff's mental impairments considered alone and in combination did not meet or medically equal the criteria of listings 12.04 and 12.06. Id. at 27. The plaintiff had moderate limitations in (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Id.

At step four, in determining the plaintiff's residual functional capacity (RFC), the ALJ cited disability reports, function reports, office treatment records, a consultative exam report and disability determination explanations. Id. at 28–32. She "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. at 28. The ALJ noted the plaintiff's alleged disability due to her bipolar disorder, chronic depression and extreme anxiety. Id. (citing Dkt. No. 12-1 at 189). She observed the plaintiff's reports that the plaintiff "does not like getting along with people," has issues with focus and comprehension, has negative thoughts and crying spells and has difficulty finishing what she starts. Id. at 28–29. The ALJ recounted the plaintiff's

3

hearing testimony, including her statements that she has memory problems, treats her mental health with medications that cause fatigue and difficulty with comprehension, lays in bed on a typical day, has irritable bowel syndrome that requires her to use the restroom up to ten times a day and stopped working because she had difficulty understanding the job and was constantly using the restroom. Id. at 29.

But the ALJ concluded that "the objective findings in this case fail[ed] to provide strong support for [the plaintiff's] allegations of disabling symptoms and limitations," and did not support her allegation that she was unable to work. Id. The ALJ cited the neuropsychiatric evaluation records from psychiatrist Dr. Joseph Burgarino. Id. at 29–30 (citing Dkt. No. 12-1 at 245–46, 252, 255, 257–58). The ALJ further referenced the plaintiff's "largely normal" and "stable" mental status examinations, citing both family nurse practitioner Barbara Szopinski's and Dr. Burgarino's treatment records. Id. at 30 (citing Dkt. No. 12-1 at 285–86). She considered Dr. Burgarino's observations that the plaintiff "reported short-term memory difficulties, which appeared anxiety related," "continued on her neuropsychiatric medication regimen as prescribed" and "continued to receive treatment for ADD, generalized anxiety, panic disorder and bipolar depression, which has been managed on a medication regimen." Id. (citing Dkt. No. 12-1 at 299, 331). The ALJ recalled that Dr. Burgarino found the plaintiff to "respond[] well to supportive techniques focused on consolidating her gains and coping with chronic illness." Id. (citing Dkt. No. 12-1 at 336). The ALJ cited treatment notes of licensed social worker Trevor Huskey. Id. (citing Dkt. No. 12-1 at 359).

Rejecting the conclusions of consultative examiner Dr. Jeffrey Polczinski, the ALJ reasoned that his notes "differ[ed] significantly from the treating

4

psychiatrist who note[d] the claimant's mental status was well controlled with medication management," and that Dr. Polczinski himself "noted the claimant's presentation was suspect for this reason." Id. at 31 (citing Dkt. No. 12-1 at 292–376). Turning to the opinion evidence, the ALJ gave partial weight to the conclusions of Drs. Cindy Matyi and Kathleen O'Brien, both medical consultants with Disability Determination Services. Id. at 31–32. Dr. Matyi opined that the plaintiff could adapt to a setting with routine and predictable duties, recommended that changes in work routine be "well explained and introduced slowly" and found that the plaintiff "can interact appropriately in a work setting with minimal interaction with the general public, co-workers, and supervisors." Id. at 31. She concluded that the plaintiff could "carry out simple and occasional complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." Id. In Dr. Matyi's opinion, the plaintiff could not have strict time limits or production standards. Id. Citing "difficulty with concentration and attention," Dr. Matyi stated that the plaintiff "would do best in a work setting with the ability to be off task 10 percent of the workday." Id. As to the plaintiff's limitations, Dr. Matyi determined that she "has mild restrictions in understanding, remembering or applying information, moderate difficulties interacting with others, moderate difficulties in concentration, persistence or pace and moderate difficulties in adapting or managing oneself." Id. (citing Dkt. No. 12-1 at 67–78).

Dr. O'Brien "opined [the plaintiff] retains the ability to understand, learn, remember, perform and sustain simple tasks in an environment with limited contact with the public, co-workers and supervisors." Id. at 31–32 (citing Dkt. No. 12-1 at 79–92). In giving the opinions of the state agency consultants partial weight, the ALJ explained that "they are generally consistent with the

5

overall medical evidence of record that shows [the plaintiff] has a history of mental health symptoms, which have largely been controlled with conservative management." Id. at 32 (citing Dkt. No. 12-1 at 292–376). However, the ALJ clarified that "[the plaintiff] would be limited to no more than simple, routine work to prevent an exacerbation of her symptoms." Id. Similarly, the ALJ gave partial weight to findings of the plaintiff's friend, Geneva Young, because "Ms. Young is not an acceptable medical source." Id. (citing Dkt. No. 12-1 at 212–19).

"Based on the entire record," the ALJ concluded that "the evidence fails to support [the plaintiff's] assertions of total disability." Id. Conceding that the plaintiff experiences some limitation, the ALJ found that the plaintiff "retains the capacity to function adequately to perform many basic activities associated with work." Id. At step five, for purposes of determining whether jobs that the plaintiff can perform exist in the national economy in significant numbers, the ALJ considered that the plaintiff was thirty-nine years old on the alleged disability onset date, that she had at least a high school education and that she was able to communicate in English. Id. at 32–33. The VE testified that the plaintiff would be able to perform work as a hand packager and assembler. Id. at 33–34. The ALJ determined that the plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 34. Accordingly, the ALJ reached a finding of "not disabled." Id.

## II.    Standard of Review

When the Appeals Council denies a plaintiff's request for review, the ALJ's decision constitutes the final decision of the Commissioner. Gedatus v. Saul, 994 F.3d 893, 898 (7th Cir. 2021). Section 405(g) of Title 42 limits the

court's review; the district court must uphold the decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. §405(g); Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Hopgood *ex rel.* L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009) (citation omitted). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010). A decision denying benefits need not discuss every piece of evidence; remand is appropriate, however, when an ALJ fails to provide adequate support for the conclusions drawn. Jelinek, 662 F.3d at 811. If conflicting evidence in the record would allow reasonable minds to disagree about whether the plaintiff is disabled, the ALJ's decision to deny the application for benefits must be affirmed if the decision is adequately supported. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

The district court must review the entire record, including both evidence that supports the ALJ's conclusions and evidence that detracts from the ALJ's conclusions, but it may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." Id. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 589 U.S. 97, 102 (2019). Judicial review is limited to the rationales offered by the ALJ. Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012) (citing SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943)). The ALJ must follow the Social Security

7

Administration's rulings and regulations in making a determination. Failure to do so requires reversal unless the error is harmless. See Prochaska v. Barnhart, 454 F.3d 731, 736–37 (7th Cir. 2006). A reviewing court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) (quoting Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). The district court will uphold a decision so long as the record reasonably supports it and the ALJ explains her analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665–66 (7th Cir. 2008).

**III.    Analysis**

The plaintiff argues that the court should remand the decision for four reasons: (1) the ALJ erred in determining the plaintiff's RFC because "the objective medical record shows [the plaintiff] has neither the mental nor physical ability to perform full-time work at any level," dkt. no. 17 at 11; (2) the ALJ erred in evaluating the opinion evidence (the state agency consultants' opinions), id. at 17; (3) the ALJ erred in finding only a moderate limitation in the plaintiff's ability to concentrate, persist or maintain pace and did not include that limitation in the hypothetical question posed to the VE, id. at 19; and (4) the ALJ erroneously construed the plaintiff's symptoms, id. at 21.

A.    RFC Determination

1.    *The Plaintiff's Brief*

The plaintiff argues that the ALJ's step four RFC determination lacks substantial evidence. Dkt. No. 17 at 11. She says that the ALJ incorrectly found the plaintiff's irritable bowel syndrome (IBS) non-severe and exhibited a

misunderstanding of chronic mental health disorders in her analysis. Id. at 11–12.

a. Irritable Bowel Syndrome

The plaintiff disagrees with the ALJ's conclusion that her IBS had not lasted or was not expected to last more than a year and that it did not more than minimally limit the plaintiff's ability to perform basic work activities. Id. at 12. The plaintiff stresses that the ALJ failed to specify that Dr. Thomas Slota was a treating physician and gastroenterologist. Id. She argues that the ALJ failed to recount Dr. Slota's specific statement that the plaintiff "should take Imodium as needed as 'other medications cannot be used here.'" Id. The plaintiff faults the ALJ for failing to ask the plaintiff at the hearing about subsequent treatment for IBS. Id.

The plaintiff says "ALJ O'Grady failed to adequately analyze the impact [the plaintiff's] IBS would have on her ability to work when formulating her RFC." Id. at 12-13. She stresses that she testified to her need to use the restroom "once every half an hour" totaling "maybe nine or 10 times per day," that medication does not help and that she cannot otherwise afford medication. Id. at 13. Stating that Dr. Slota's notes and diagnosis support such testimony, the plaintiff contends that the ALJ "ignore[d] that the jobs recommended for [the plaintiff] allow an amount of time off task of no more than 10 percent of the time." Id. The plaintiff emphasizes that the VE recommended jobs that "permit two 15 minute breaks and one 30-minute meal break separated by about two hours each over the course of an eight-hour work shift." Id. According to the plaintiff, "[t]hese jobs would not accommodate the frequent (about once every half hour), unscheduled bathroom breaks that [the plaintiff] would require and allowing for her to use the bathroom as necessary would

9

exceed the requisite amount of time off task for the jobs." Id. Concluding that the ALJ failed to build an accurate and logical bridge from the evidence to her RFC determination, the plaintiff reasons that the ALJ did not "explain how [the plaintiff] would be able to work full-time and stay on task with her IBS" or "properly account for [the plaintiff's] impairments." Id. at 14.

b.    Mental Impairments

As for her mental impairments, the plaintiff stresses that bipolar disorder is episodic and has symptoms that fluctuate even under proper treatment. Id. at 15 (quoting Jelinek, 662 at 814). For that reason, she argues the ALJ inappropriately cited normal mental status examinations as a basis for concluding that the plaintiff is not disabled. Id. She asserts that while her treating psychiatrist sometimes found her conditions "well controlled at present," the notes do not explain what that means. Id. The plaintiff argues that the ALJ incorrectly concluded that the plaintiff had no recent history of exacerbation in her symptoms, emphasizing that Dr. Burgarino documented "increased difficulties with attention, concentration and focus" in November 2017, "residual mood lability with severe anxiety at times of psychotiform proportions" in January 2018 and continued short-term memory difficulty in June 2018. Id. at 16. Finally, the plaintiff contends that the ALJ improperly substituted the ALJ's judgment for that of a physician in characterizing the plaintiff's treatment history as "conservative" even though her treatment requires long-term medication management under a psychiatrist's supervision. Id. at 16–17.

2.    *The Commissioner's Response*

The Commissioner responds that the plaintiff's arguments challenge the ALJ's weighing of the plaintiff's subjective complaints against the medical

10

experts' opinions, not the ALJ's RFC determination. Dkt. No. 29 at 9.

a.     Irritable Bowel Syndrome

According to the Commissioner, the plaintiff "produce[d] no evidence of limitations related to irritable bowel syndrome besides her own testimony and thus merely challenges the reasonableness of the ALJ's finding that her subjective complaints were not persuasive." Id. The Commissioner argues that nothing required the ALJ to specifically address Dr. Slota's specialty or indication "that other medications, aside from Immodium, could not be used." Id. The Commissioner opines that the ALJ adequately weighed the evidence when she rejected the plaintiff's allegation of a "nearly constant need to use the bathroom," reasoning that (1) Dr. Slota did not officially diagnose the plaintiff with IBS, (2) aside from her own statements, the plaintiff provided no evidence of any limitation related to IBS, (3) the plaintiff received minimal treatment for IBS, (4) "Dr. Slota recommended no aggressive treatment" and (5) the plaintiff's allegations of symptoms "drastically changed." Id. at 10. As to a lack of any specific questions at the hearing about treatment for IBS, the Commissioner states that "[n]o authority mandates that the ALJ ask a claimant any particular questions, let alone ask questions of a counseled claimant who maintains the burden to make her best case for benefits." Id. The Commissioner says that "[t]he minimal and conservative treatment, combined with Plaintiff's changing account of her symptoms, reasonably suggested that her account of symptoms related to irritable bowel syndrome were not accurate." Id. The Commissioner argues the ALJ adequately articulated why she found the plaintiff's allegations of symptoms from IBS inaccurate. Id. at 11.

b.     Mental Impairments

Disagreeing with the plaintiff's arguments regarding her mental limitations, the Commissioner contends that other than her testimony, the plaintiff presented no evidence of significant fluctuation in her symptoms. Id. The Commissioner stresses that treating psychiatrist "Dr. Burgarino observed at the beginning and end of 2017 that medication well controlled Plaintiff's bipolar disorder," id. (citing Dkt. No. 12-1 at 255, 336), and that no treatment provider found extreme, fluctuating symptoms, id. The Commissioner argues that "[a] psychological treatment provider's repeated notation of 'well controlled' bipolar symptoms constitutes substantial evidence that Plaintiff did not accurately describe disabling fluctuations in symptoms related to the condition." Id. at 11–12. The Commissioner says that the ALJ "reasonably determined that Plaintiff's overall treatment did not support her complaints," reasoning that the ALJ noted the plaintiff had no recent hospitalizations or exacerbations of particular symptoms. Id. at 12 (citing Dkt. No. 12-1 at 31). Stating that routine, conservative and effective treatment can constitute a basis to reject allegations of disability, the Commissioner asserts that the ALJ noted the plaintiff's "treating psychiatrist repeatedly observed the effectiveness of Plaintiff's medicinal treatment for mental symptoms." Id. (citing Sienkiewicz v. Barnhart, 409 F.3d 798, 803–04 (7th Cir. 2005); Molnar v. Astrue, 395 Fed. App'x 282, 288 (7th Cir. 2010)). The Commissioner says the ALJ reasonably concluded that the plaintiff's treatment history did not support her particular allegations of extreme limitations. Id. at 12–13.

3.     The Plaintiff's Reply

The plaintiff replies that she "requires long-term psychotropic medication management for her severe mental health problems and presents to her

12

treating psychiatrist every two to three months." Dkt. No. 32 at 2. She concludes the ALJ "failed to consider [the plaintiff's] limited daily activities, the aggregate effects of her irritable bowel syndrome and other health issues, and the impact of many medicines she takes in an attempt to control her chronic impairments." Id. at 2–3. Noting the Commissioner's statement that "the doctor did not 'officially diagnose Plaintiff with irritable bowel syndrome,'" the plaintiff argues that "the ALJ clearly acknowledged the diagnosis." Id. at 4. The plaintiff suggests that the Commissioner "wrongly argues" that she received only minimal treatment for her irritable bowel syndrome and that Dr. Slota "recommended no aggressive treatment.'" Id.

    4. *Analysis*

  Even if the ALJ erred in concluding that the plaintiff's irritable bowel syndrome was non-severe, that error would be harmless. A severe impairment can influence a disability determination in two ways: (1) it can meet or medically equal a listing at step three, resulting in *per se* disability or (2) it factors into the analysis of the plaintiff's RFC at step four. Whitehead v. Saul, 841 F. App'x 976, 980 (7th Cir. 2020). But at step four, the ALJ must consider *all* impairments regardless of severity. Id. The plaintiff has not argued that her irritable bowel syndrome matches a listing at step three. "So the only real question is whether it was properly taken into account in determining the residual functional capacity." Id.

  The ALJ's opinion reflects that she considered the plaintiff's allegations of limitations from irritable bowel syndrome. She recounted that the plaintiff "initially reported having one stool per day" and later "reported that she had diarrhea, abdominal pain and a history of cholecystectomy." Dkt. No. 12-1 at 26 (citing Dkt. No. 12-1 at 268–69). The ALJ recalled the plaintiff's hearing

testimony "that she has irritable bowel syndrome and must use the restroom up to 10 times a day." Id. at 28. She recounted how Dr. Slota's physical examination of the plaintiff revealed a slightly tender abdomen and normal TSH and transglutaminase levels. Id. at 26 (citing Dkt. No. 12-1 at 267). She noted Dr. Slota's finding that the plaintiff "fit the description of irritable bowel syndrome from diarrhea" and his recommendation that the plaintiff "follow a special diet and avoid stress as well as treat her condition with medication." Id. (citing Dkt. No. 12-1 at 267).

Substantial evidence supports the ALJ's determination that the medical evidence did not support the plaintiff's allegations of disabling symptoms. The ALJ considered the objective medical evidence in the record regarding the plaintiff's irritable bowel syndrome. She found that the record reflected that the plaintiff "was only recently diagnosed with irritable bowel syndrome" in July 2018 (two months prior to the hearing), received no follow-up treatment for IBS and received "only sparse conservative management for treatment of migraine headaches." Id. at 26, 31. She concluded that the plaintiff's IBS did "not cause more than minimal limitations" and therefore was non-severe. Id. at 31. The ALJ did not fail to analyze the impact of the plaintiff's IBS; rather, the ALJ did not give great weight to the plaintiff's allegations of disabling symptoms. This court cannot reweigh the evidence.

The plaintiff's other arguments do not provide a basis for remand. The ALJ did not dispute Dr. Slota's findings; the fact that the ALJ did not explicitly state in her decision that Dr. Slota is a gastroenterologist or that Dr. Slota prescribed Imodium does not demonstrate that the ALJ's decision was not supported by substantial evidence. The plaintiff bears the burden of proof at steps one through four. Mandrell v. Kijakazi, 25 F.4th 514, 516 (7th Cir. 2022)

(citing <u>Butler v. Kijakazi</u>, 4 F.4th 498, 501 (7th Cir. 2021)). That means that the plaintiff had the burden to present evidence about the extent of her follow-up treatment. The fact that the ALJ did not inquire at the hearing about the extent of the plaintiff's follow-up treatment for IBS is not reversible error.

The ALJ also reasonably disagreed with the plaintiff's allegations of disabling symptoms related to her mental impairments. The ALJ tied her conclusions to the objective medical evidence in the record. She concluded that "[t]he objective medical findings reveal some limitations, but not to the extent alleged by [the plaintiff]." Dkt. No. 12-1 at 31. Specifically, the ALJ found that "the objective findings in this case fail[ed] to provide strong support for [the plaintiff's] allegations of disabling symptoms and limitations" and did not support her allegation that she was unable to work. <u>Id.</u> at 29. Citing neuropsychiatric evaluation records from treating psychiatrist Dr. Burgarino, the ALJ noted (1) the plaintiff's history of treatment for bipolar depression, (2) the plaintiff's statement that she was "feeling good with treatment," (3) that the plaintiff presented as casually dressed, well-groomed, pleasant and interactive, (4) the plaintiff's acknowledgement that "her agitation, confusion, dysphoria, anhedonia, melancholia, mood lability and anxiety were all under good control," (5) the fact that examination revealed "no signs of a thought disorder, psychosis or of organic mental disease," (6) the fact that the plaintiff's mood "was euthymic and well-modulated," (7) the fact that the plaintiff's "affect was appropriate to content," (8) the fact that the plaintiff "denied suicidal, homicidal and all other violent ideation on exam," (9) the fact that the plaintiff "had no abnormal involuntary movements," (10) the fact that the plaintiff denied abusing alcohol and drugs, (11) the fact that the plaintiff "was continued on medication," (12) the fact that Dr. Burgarino recommended that the plaintiff

15

receive psychotropic medication for symptom management, (13) the fact that the plaintiff "continued to deny any suicidal, homicidal and all other violent ideation on examination," (14) the fact that the plaintiff had no focal abnormality on examination, (15) the fact that the plaintiff "was stable, coping and doing well on her neuropsychiatric medications," (16) the fact that the plaintiff's anxiety and chronic recurrent major depression were well-controlled, and (17) the fact that the plaintiff "responded well to supportive techniques focused on consolidating her gains and coping with chronic illness." Id. at 29–30 (citing Dkt. No. 12-1 at 245–46, 252, 255, 257–58).

The ALJ referenced the plaintiff's "largely normal" and "stable" mental status examinations, citing both family nurse practitioner Barbara Szopinski's and Dr. Burgarino's treatment records. Id. at 30 (citing Dkt. No. 12-1 at 285–86). She considered Dr. Burgarino's observations that the plaintiff "reported short-term memory difficulties, which appeared anxiety related," "continued on her neuropsychiatric medication regimen as prescribed" and "continued to receive treatment for ADD, generalized anxiety, panic disorder and bipolar depression, which has been managed on a medication regimen." Id. (citing Dkt. No. 12-1 at 299, 331). The ALJ recounted that treating psychiatrist Dr. Burgarino found the plaintiff to "respond[] well to supportive techniques focused on consolidating her gains and coping with chronic illness." Id. (citing Dkt. No. 12-1 at 336). She cited treatment notes of licensed social worker Trevor Huskey that reflected the plaintiff's (1) unremarkable appearance, (2) normal gait and posture, (3) steady eye contact, (4) "normal behavior," (5) complaints of a depressed mood, (6) flat affect, (7) congruent thought processes, (8) "normal thought content," (8) lack of notable perceptual problems, (9) "normal orientation, speech and good insight," (10) "good

16

judgment, remote memory, recent memory and concentration" and (11) good attention. Id. (citing Dkt. No. 12-1 at 351-52). And the ALJ observed that Dr. Burgarino indicated that the plaintiff "continued to have normal mental states examinations." Id. (citing Dkt. No. 12-1 at 359).

The ALJ also considered the results of Dr. Jeffrey Polczinki's May, 2017 consultative examination of the plaintiff (a year and four months before the hearing). Id. at 30–31 (citing Dkt. No. 12-1 at 259–65). Dr. Polczinki stated that the plaintiff's visits with Dr. Burgarino in March, February and September showed stability with medication. Dkt. No. 12-1 at 260. Dr. Polczinski opined that the plaintiff could understand simple instructions and routine directions. Id. He found that the plaintiff "may have some difficulties with attention and concentration." Id. at 31. Dr. Polczinski stated that the plaintiff "seems to be able to relate appropriately to coworkers and supervisors" and "may have some mild issues with managing stress and/or change." Id. But Dr. Polczinski "noted [the plaintiff's] presentation was suspect based on her treatment records." Id.

In rejecting Dr. Polczinski's conclusions, the ALJ reasoned that "they differ significantly from the treating psychiatrist who note[d] the claimant's mental status was well controlled with medication management," and that Dr. Polczinski himself "noted the claimant's presentation was suspect for this reason." Id. at 31 (citing Dkt. No. 12-1 at 292–376).

Turning to the opinion evidence, the ALJ gave partial weight to the conclusions of Drs. Cindy Matyi and Kathleen O'Brien, both medical consultants with Disability Determination Services. Id. at 31–32. Dr. Matyi opined that the plaintiff could adapt to a setting with routine and predictable duties, recommended that changes in work routine be "well explained and introduced slowly," and found that the plaintiff "can interact appropriately in a

17

work setting with minimal interaction with the general public, co-workers, and supervisors." Id. at 31. She concluded that the plaintiff could "carry out simple and occasional complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." Id. In Dr. Matyi's opinion, the plaintiff could not have strict time limits or production standards. Id. Citing "difficulty with concentration and attention," Dr. Matyi stated that the plaintiff "would do best in a work setting with the ability to be off task 10 percent of the workday." Id. As to the plaintiff's limitations, Dr. Matyi determined that she "has mild restrictions in understanding, remembering or applying information, moderate difficulties interacting with others, moderate difficulties in concentration, persistence or pace and moderate difficulties in adapting or managing oneself." Id. (citing Dkt. No. 12-1 at 67–78). Dr. O'Brien "opined [the plaintiff] retains the ability to understand, learn, remember, perform and sustain simple tasks in an environment with limited contact with the public, co-workers and supervisors." Id. at 31–32 (citing Dkt. No. 12-1 at 79–92). In giving the opinions of the state agency consultants partial weight, the ALJ explained that "they are generally consistent with the overall medical evidence of record that shows [the plaintiff] has a history of mental health symptoms, which have largely been controlled with conservative management." Id. at 32. (citing Dkt. No. 12-1 at 292–376). However, the ALJ clarified that "[the plaintiff] would be limited to no more than simple, routine work to prevent an exacerbation of her symptoms." Id.

Similarly, the ALJ gave partial weight to the findings of the plaintiff's friend, Geneva Young. Id. Ms. Young opined that the plaintiff's "condition affects her ability to remember, complete tasks, concentrate, understand, follow instructions, and get along with others." Id. (citing Dkt. No. 12-1 at 212–19). While she characterized Ms. Young's findings as generally consistent with

the plaintiff's allegations, the ALJ stated that "Ms. Young is not an acceptable medical source." Id.

The plaintiff asserts that bipolar disorder fluctuates and argues that the fact that she was stable when she visited her doctor does not necessarily mean that she will be stable enough to perform a full-time job. She cites the Seventh Circuit's opinion in Jelinek v. Astrue, 662 F.3d 805 (7th Cir. 2011). But the Jelinek court was discussing an ALJ's references to a claimant's failure to comply with medications, not stable progress notes from a treating physician. The Jelinek court stated,

> The ALJ apparently concluded that Jelinek's symptoms would have remained under control but for an unwillingness to take her medications as directed. But we have often observed that bipolar disorder, one of Jelinek's chief impairments, is by nature episodic and admits to regular fluctuations even under proper treatment. ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports and adverse credibility inference.

Id. at 814.

The plaintiff also cited Phillips v. Astrue, 413 Fed. App'x 878 (7th Cir. 2010). But again, the ALJ in that case noted all the plaintiff's improvements, without acknowledging that the plaintiff "improved only after the doctors had adjusted her medications and discovered a new combination of prescriptions that would adequately manage her symptoms." Id. at 886.

Unlike the cases the plaintiff cites, hers is not a situation in which the plaintiff's treating physician concluded that her bipolar disorder and depression prevented her from working, and the ALJ ignored that conclusion and cherry-picked other medical records or opinions that indicated otherwise. The ALJ credited the plaintiff's treating physician, who repeatedly reported that the plaintiff's mental status exams were normal or stable. There is no question

that mental illness fluctuates and that people who suffer from mental illnesses such as bipolar disorder and depression can have good days and bad days. But the records the ALJ had before her indicated that the plaintiff was stable with medication. Even Dr. Polczinski noted that the plaintiff's descriptions of her symptoms did not square with the records of her long-time treating physician.

The plaintiff also argues that the ALJ incorrectly concluded that she had no exacerbation of her symptoms. It is true that on November 27, 2017, Dr. Burgarino reported, "Mental status examination reveals increased difficulties with attention, concentration and focus." Dkt. No. 12-1 at 336. Two sentences earlier, however, he wrote, "Mental status is stable." Id. at 335. Similarly, Dr. Burgarino's progress report from January 16, 2018 states that the plaintiff's "[m]ental status examination is stable," then states—as the plaintiff points out—that he noted "[r]esidual mood lability with severe anxiety at times of psychotiform proportions is noted." Id. at 329. The plaintiff correctly recounts that on June 25, 2018, Dr. Burgarino's progress notes stated that the plaintiff reported "continued short-term memory difficulties, which appear anxiety-related." Id. at 299. But that is not a report of deterioration or exacerbation—it is, as he wrote, a report of a continuing symptom. And in this report, Dr. Burgarino stated that the plaintiff's mental status exam was "[n]ormal." Id. Dr. Burgarino's progress reports do not support the plaintiff's claims that her symptoms were worsening or were exacerbated, and the ALJ did not err in stating that the plaintiff had no recent history of exacerbations of her symptoms.

The ALJ built the requisite logical bridge. Considering the record, the ALJ's decision reflects relevant evidence that a reasonable mind could accept as adequate to support her conclusion that the plaintiff had the RFC to

perform a full range of work at all exertional levels with nonexertional limitations: "simple, routine, repetitive non-complex work with occasional change in work routine," no fast-paced production work, occasional interaction with co-workers and supervisors and no public contact. Id. at 28. The plaintiff has not identified anything in the record that the ALJ failed to consider in weighing her mental limitations. The court will not remand on this issue.

     B.    Opinion Evidence

     1.    *The Plaintiff's Brief*

The plaintiff argues that the ALJ adopted only the portions of the opinion evidence that supported the plaintiff's ability to perform unskilled work. Dkt. No. 17 at 17–18. She contends that the ALJ failed to explain "why she has rejected the remainder of the assessments." Id. at 18. The plaintiff reasons that while the ALJ determined that the plaintiff could perform simple, routine tasks throughout an eight-hour workday, doctors opined that the plaintiff "would be off task 10% of the day, she could not have a job with strict time limits or production standards and changes needed to be well-explained and introduced slowly." Id. She says that by accepting only portions of the assessments, the ALJ failed to build a logical bridge between the evidence and the RFC. Id.

     2.    *The Commissioner's Response*

The Commissioner responds that the outcome in this case would have been the same even if the ALJ had rendered an RFC expressly limiting the plaintiff to work settings that allowed her to be off task 10% of the day and where changes came slowly and with explanation. Dkt. No. 29 at 17–18. The Commissioner asserts that the ALJ reasonably contrasted the opinions of the state agency consultants with "the unremarkable results of the mental status

21

exams and Dr. Burgarino's repeated observations in 2017 that [the plaintiff's] mental symptoms were well controlled." Id. at 18.

The Commissioner maintains that "[t]he lack of a limitation to 10% off task in the RFC finding was irrelevant." Id. The Commissioner reasons that the VE "identified numerous jobs that someone with Plaintiff's RFC could perform and importantly specified that all of those jobs allowed the employee to be off task up to 10% of the time." Id. (emphasis omitted). The Commissioner contends that the VE therefore showed that "someone with Plaintiff's mental limitations could do numerous jobs in the national economy even if the ALJ had adopted the state-agency psychologists' observation that Plaintiff 'would do best' in a job that allowed her to be off task 10% of the time." Id. at 18-19 (citing Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)). The Commissioner stresses that the ALJ's RFC determination—which limits the plaintiff to "the simplest, most relaxed-paced tasks and only occasional changes in routine"—requires changes to be well explained and introduced slowly. Id. at 19. Regarding the state agency consultants' opinion that the plaintiff could not work within strict time limits or production standards, the Commissioner argues that "the RFC accounted for that opinion, which, in any event, also would not have changed the outcome of the case." Id. at 18. The Commissioner stresses that the state agency consultants clarified that the plaintiff functioned "well enough to work." Id. at 19.

The Commissioner contends that the ALJ's choice to not expressly include these limitations in the RFC was reasonable because the ALJ concluded that the state agency consultants "partially underestimated" the plaintiff's mental functioning, and "because her own treating psychiatrist . . . repeatedly observed that Plaintiff's conditions were well-controlled." Id. at 19-

22

20 (citing Dkt. No. 12-1 at 32). Citing SSR 96-6P, the Commissioner states that the regulations operative at the time of the ALJ's decision did not require her to adopt the findings of the state-agency consultants. <u>Id.</u> at 20. She says the ALJ adequately recognized and responded to the consultants' conclusions. <u>Id.</u> (citing <u>Kolar v. Berryhill</u>, 695 F. App'x 161-62 (7th Cir. 2017)).

3. *The Plaintiff's Reply*

According to the plaintiff, the Commissioner's argument that the ALJ's RFC determination necessarily includes well-explained and slowly introduced changes is an impermissible *post hoc* rationale. Dkt. No. 32 at 5 (citing <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 916 (7th Cir. 2003)).

4. *Analysis*

There is no basis for remand on this issue. As the court has stated, it cannot substitute its judgment for that of the Commissioner by reweighing evidence. Even if the ALJ erred in not explicitly including in the RFC a limitation to jobs that allowed the plaintiff to be off task up to 10% of the time and where changes are well-explained and introduced slowly, that error would be harmless. The ALJ asked the VE about a hypothetical, limiting the claimant to

> medium level work. Mentally limited to jobs considered simple, routine, repetitive, non-complex. Occasional change in work routine. No fast paced production type work. No public contact. Occasional interaction with coworkers and supervisors. No climbing ropes, ladders, scaffolds, working with heights or hazards. Occasional stooping, kneeling, crawling, balancing and crouching. Occasionally climbing ramps and stairs.

Dkt. No. 12-1 at 60. The ALJ then asked the VE about a claimant who needed to be off task up to 10% of the time; the VE identified jobs that specifically allowed a claimant to be off task up to 10% of the time. <u>Id.</u> at 61. The RFC

23

limits the plaintiff to "simple, routine, repetitive non-complex work with occasional change in work routine," no "fast-paced production work," "occasional interaction with co-workers and supervisors" and "no public contact." <u>Id.</u> at 28. This shows that the ALJ considered all the limitations presented by the offered opinion testimony. The RFC accounts for the opinion evidence in the record.

      C.    <u>Concentration, persistence and pace</u>

      1.    *The Plaintiff's Brief*

The plaintiff contends that the ALJ's hypothetical did not "explicitly state" or account for the plaintiff's moderate limitation in concentration, persistence and pace. Dkt. No. 17 at 19. She says the ALJ failed to offer a "detailed connection (between [the plaintiff's] deficits in concentration, persistence, or pace and assigned limitation) to the VE." <u>Id.</u> at 20. Concluding that "no reasonable reviewer could glean such a connection from reviewing ALJ O'Grady's decision," the plaintiff argues that "even the Agency reviewers found greater deficits in concentration, persistence or pace than explained by the ALJ." <u>Id.</u> She says that while "the Agency opinions specifically found [the plaintiff] could not perform a job with 'strict time limits or production standards,'" the jobs the ALJ cited at step five "are all assembly line or packing work." <u>Id.</u> The plaintiff concludes that "[t]herefore, . . . this matter warrants a remand or reversal." <u>Id.</u> at 20-21.

      2.    *The Commissioner's Response*

The Commissioner responds that the plaintiff's argument "is based on outdated authority and a misinterpretation of the relationship between the mental RFC and the moderate rating in concentration persistence or pace that the ALJ found at step three." Dkt. No. 29 at 20–21. The Commissioner argues

24

that ALJs do not normally phrase mental restrictions in moderate or marked limitations at steps four and five and instead "usually attempt to translate such a limitation into job-related restrictions that a VE is likely to understand." Id. at 21 (citing Thompson v. Saul, 470 F. Supp. 3d 909, 927 (E.D. Wis. 2020)) (internal quotations omitted).

Citing Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019), the Commissioner argues that "[r]ecent decisions clarify that even less robust mental limitations than those at issue here can be compatible with a moderate rating in the broad functional category of concentration, persistence, or pace." Id. at 22. The Commissioner opines that the ALJ's RFC determination reasonably translated the plaintiff's moderate limitation in concentration, persistence or pace into "vocationally understandable terms." Id. He asserts that the plaintiff has not met her burden of identifying "potentially persuasive limitations that were unreasonably excluded from the mental RFC." Id. at 23. The Commissioner stresses that the RFC accounted for the opinions of the state agency consultants. Id. And the Commissioner argues that the ALJ reasonably relied on the VE's testimony at step five. Id. at 23–24. The Commissioner reasons that the plaintiff "presents no reason or authority— besides her own post hoc, lay say so—establishing that the ALJ unreasonably relied on the impartial expert's testimony that someone with Plaintiff's RFC could perform the jobs the vocational expert identified and indeed could do those jobs while being off task up to 10% of the time." Id. at 24 (citing Dkt. No. 12-1 at 33–34, 60–62).

3. *The Plaintiff's Reply*

The plaintiff replies that the Commissioner's reliance on Jozefyk is misguided because "the claimant in that case failed to testify about any

restrictions regarding concentration, persistence or pace deficits and the record did not support any." Dkt. No. 32 at 6. The plaintiff distinguishes her own case by stating that her "psychiatrist noted increased difficulties with attention, concentration and focus," id. (citing Dkt. No. 12-1 at 335–36), and "ongoing short term memory difficulties, which appear anxiety related," id. (citing Dkt. No. 12-1 at 299). The plaintiff stresses her testimony relating to her relative highs and lows throughout a day and her memory difficulties. Id. (citing Dkt. No. 12-1 at 55–58). Based on that testimony, the plaintiff argues that Jozefyk is inapposite. Id.

    4. *Analysis*

  This issue has been heavily litigated in the recent past. The Seventh Circuit has held that eliminating strict production quotas or a fast pace does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. DeCamp v. Berryhill, 916 F.3d 671, 675–76 (7th Cir. 2019); O'Connor-Spinner v. Colvin, 832 F.3d 690, 698 (7th Cir. 2016). Without overruling these cases, the Seventh Circuit more recently has held that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." Pavlicek v. Saul, 994 F.3d 777, 783 (7th Cir. 2021). While the Seventh Circuit does not require specific phrasing with respect to moderate limitations in concentration, persistence and pace, Lothridge v. Saul, 984 F.3d 1227, 1233 (7th Cir. 2021); Crump v. Saul, 932 F.3d 567, 570 (7th Cir. 2019), it still requires an ALJ to build a logical bridge between the evidence and the limitation. Again, a moderate restriction may translate into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor, Pavlicek, 994 F.3d at 783; Burmester v. Berryhill, 920 F.3d 507, 511 (7th Cir. 2019); Baldwin v.

26

Berryhill, 746 Fed. App'x 580, 584 (7th Cir. 2018), or where the ALJ traces it from the claimant's testimony regarding what distracted her or gave her problems concentrating, see Martin v. Saul, 950 F.3d 369, 374 (7th Cir. 2020) (holding that there are no "magic words," but that the ALJ must account for the totality of a plaintiff's limitations); Kuykendoll v. Saul, 801 Fed. App'x 433, 438 (7th Cir. 2020). As the Seventh Circuit explained in Urbanek v. Saul, 796 F. Appx. 910, 914 (7th Cir. 2019), "even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record."

Here, the ALJ built the requisite logical bridge. Consultative examiner Dr. Polczinski opined that while the plaintiff "may have some difficulties with attention and concentration," she was "able to understand at least simple instructions" and "recall routine directions." Dkt. No. 12-1 at 264. In her psychiatric review, state agency consultant Dr. Matyi considered Dr. Polczinski's report and opined that the plaintiff had a moderate limitation in concentration, persistence or pace. Id. at 72, 74. She explained that the plaintiff was able to understand simple instructions and recall routine directions. Id. at 72–73. She concluded that the plaintiff (1) did not have understanding and memory limitations, (2) was not significantly limited in her ability to carry out very short and simple instructions, (3) was moderately limited in her ability to carry out detailed instructions, (4) was moderately limited to maintain attention and concentration for extended periods, (5) was not significantly limited in her ability to perform activities within a schedule, maintain regular attendance or be punctual within customary tolerances, (6)

27

was not significantly limited in her ability to sustain an ordinary routine without special supervision, (7) was moderately limited in the ability to work in coordination with or proximity to others without distraction, (8) was not significantly limited in the ability to make simple work-related decisions, and (9) was moderately limited in the ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. at 74–75. In a narrative assessment, Dr. Matyi stated that the plaintiff "[could] carry out simple and occasional complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." Id. at 75. She restricted the plaintiff to "[n]o strict time limits or production standards," and found that the plaintiff "would do best in a work setting with the ability to be off task 10% of the work day." Id. State agency consultant Dr. Kathleen O'Brien reached the same conclusions. Id. at 88–89.

Regarding the hypothetical, the ALJ examined VE William Dingess during the plaintiff's September 13, 2018 hearing. Dkt. No. 12-1 at 58–62. In the hypothetical, the ALJ limited the hypothetical claimant to

> medium level work. Mentally limited to jobs considered simple, routine, repetitive, non-complex. Occasional change in work routine. No fast paced production type work. No public contact. Occasional interaction with coworkers and supervisors. No climbing ropes, ladders, scaffolds, working with heights or hazards. Occasional stooping, kneeling, crawling, balancing and crouching. Occasionally climbing ramps and stairs.

Id. at 60. While the VE concluded that such a hypothetical claimant could not perform the plaintiff's past relevant work, he opined that such a claimant *could* work as a housekeeping cleaner, assembler-light level, hand packager-medium, assembler-sedentary and hand packer-sedentary. Id. at 60–61. The VE testified that these jobs allowed a worker to be off task no more than ten percent of the

28

time and provided two fifteen-minute breaks and one half-hour meal break separated by about two hours of the course of an eight-hour work shift. Id. at 61–62.

The ALJ found that the plaintiff has a moderate limitation in concentrating, persisting or maintaining pace. Dkt. No. 12-1 at 27. The RFC limits the plaintiff to "simple, routine, repetitive non-complex work with occasional change in work routine," no "fast-paced production work," "occasional interaction with co-workers and supervisors" and "no public contact." Id. at 28. The ALJ connected these findings to evidence in the record. Her decision cited the reports of Drs. Polczinski, Matyi and O'Brien. Id. at 30–32. The ALJ noted the plaintiff's allegations that while she is "able to pay attention for a few minutes," her "condition affects her ability to remember, complete tasks, concentrate, understand, follow instructions and finish what she starts. Id. at 28–29 (citing Dkt. No. 12-1 at 203–11). Citing treatment records, the ALJ observed that the plaintiff "was alert and oriented with no noted deficits to memory or concentration," id. at 27 (citing dkt. no. 12-1 at 271–91, and "had good concentration and attention," id. (citing dkt. no. 12-1 at 291-376). The ALJ's hypothetical adequately accounted for the plaintiff's moderate limitation in concentration, persistence and pace. The ALJ's findings in conjunction with the jobs the VE identified are adequate to support the conclusion that there are jobs in the national economy that the plaintiff can perform. Substantial evidence supported the ALJ's determinations regarding the plaintiff's limitations in concentration, persistence and pace.

29

D. <u>Plaintiff's Symptoms</u>

     1. *The Plaintiff's Brief*

Finally, the plaintiff argues the ALJ "rendered an erroneous symptom determination." Dkt. No. 17 at 21. She contends that the ALJ erred in concluding that her statements regarding the intensity of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." <u>Id.</u> (citing Dkt. No. 12-1 at 31). The plaintiff asserts that the applicable standard does not require alleged symptoms to be "entirely or fully consistent" with the record. <u>Id.</u> (citing 20 C.F.R. §404.953(a); <u>Minger v. Berryhill</u>, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018)). According to the plaintiff, "[t]o the extent that [the ALJ] explained her rationales for dismissing [the plaintiff's] testimony and subjective complaints, they were improper." <u>Id.</u> at 22. She argues that the ALJ incorrectly recounted consultative examiner Dr. Polczinksi's discussion of her daily activities. <u>Id.</u> (citing Dkt. No. 12-1 at 261, 30–31). Conceding that Dr. Polczinski found her allegations of symptoms "a bit suspect," the plaintiff stresses that he nevertheless "did not dismiss [the plaintiff's] mental health problems and opined that she would be limited as an employee." <u>Id.</u> (citing Dkt. No. 12-1 at 262–64).

Recalling her prescriptions for various medications, the plaintiff argues that the ALJ failed to consider the impact of side effects on her ability to work. <u>Id.</u> at 23. She concludes that the ALJ failed to "adequately consider [her] daily activities, characterized as significantly passive." <u>Id.</u> (citing Dkt. No. 12-1 at 264). The plaintiff argues that "the ALJ gave no rationale as to how a person who engages in such restricted physical activity would have the capacity to work full-time at a light level." <u>Id.</u> at 24 (citing <u>Clifford</u>, 227 F.3d at 872). She asserts that the ALJ's failure to consider her limited daily activities coupled

with her health issues shows that "the ALJ's symptom determination was improper." Id. at 25.

    2. *The Commissioner's Response*

  The Commissioner argues that "[a] common sense reading of the decision indicates that the ALJ determined that inconsistencies with the record lack support from the medical evidence undermined the accuracy of Plaintiff's complaints." Dkt. No. 29 at 13 (citing Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010)). The Commissioner argues that even if the ALJ's use of boilerplate language was error, it was harmless because substantial evidence otherwise supported the ALJ's consideration of the plaintiff's allegations of her subjective symptoms. Id. He reasons that the plaintiff has not challenged the reasonableness of the ALJ's conclusion that the plaintiff's ability to drive, shop, go outside and maintain a friendship undermined her testimony. Id. at 15. The Commissioner adds that even if the ALJ erred in discussing the plaintiff's daily activities, that error was harmless given the whole of the ALJ's decision. Id. at 15–16 (citing Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009)).

  The Commissioner contends that consultative examiner Dr. Polczinski did not corroborate the plaintiff's testimony. Id. at 16. The Commissioner says that the ALJ reasonably considered Dr. Polczinski's report, "which did not establish that the ALJ's weighing of plaintiff's subjective complaints was patently wrong." Id. Regarding the ALJ's decision not to discuss the plaintiff's medicinal side effects, the Commissioner again asserts that "substantial evidence showed that Plaintiff's subjective complaints were not persuasive," and that the plaintiff has identified no other evidence of her side effects. Id. at 16–17. Finally, the Commissioner concludes that the ALJ reasonably discounted the plaintiff's allegations of "extremely limited activities" because

"no treatment provider corroborated them, her own treatment provider said her conditions were well controlled, she repeatedly said she was doing well, her mental status exams were largely normal, and she engaged in some activities that indicated she was not as limited as she described." Id. at 17. The Commissioner asks the court to "resist Plaintiff's invitation to reconsider the ALJ's weighing of Plaintiff's subjective complaints." Id. (citing Moore v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014)).

3. *Analysis*

The plaintiff's argument amounts to a request for this court to remand the case because the ALJ did not adopt or credit her allegations of her symptoms. On the record before it, this court cannot do so. As the court has explained, the ALJ reasonably declined to adopt the plaintiff's allegations of her symptoms. The ALJ tied her decision to evidence that a reasonable mind could accept as adequate to support her conclusion that the plaintiff had the RFC to perform a full range of work at all exertional levels with nonexertional limitations "simple, routine, repetitive non-complex work with occasional change in work routine," no fast-paced production work, occasional interaction with co-workers and supervisors and no public contact. Id. at 28.

This court acts as an appellate court in Social Security cases. It cannot make credibility determinations, or weigh evidence. It is limited to reviewing the rationales provided by the ALJ under the standards articulated in a regulatory framework and in years of case law. In that role, the court cannot conclude that the ALJ committed error warranting remand.

## IV. Conclusion

The court **ORDERS** that the decision of the Commissioner is **AFFIRMED**. The clerk will enter judgment accordingly.

The court **ORDERS** that this case is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 24th day of October, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**